# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-22360-JLK/Becerra

REYNOLD FRANCOIS,

      Plaintiff,

vs.

UNITED STATES OF AMERICA and
KOREY JAKE DANG,

      Defendants.

_____/

## OMNIBUS REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT[1]

THIS CAUSE came before the Court on Defendant United States of America's (the "Government") Motion to Dismiss Plaintiff Reynold Francois' ("Francois" or "Plaintiff") Third Amended Complaint (the "Government Motion"), ECF No. [52], and Defendant Korey Jake Dang's ("Special Agent Dang") Motion to Dismiss Plaintiff's Third Amended Complaint (the "Special Agent's Motion"), ECF No. [69].  Plaintiff filed a Response in Opposition to the Government Motion, ECF No. [54], and the Government filed a Reply, ECF No. [55].  Plaintiff filed a Response in Opposition to the Special Agent's Motion, ECF No. [77][2], and Special Agent Dang filed a Reply, ECF No. [78].  Special Agent Dang also filed a Notice of Supplemental

---

[1] The Motions were referred to the undersigned by the Honorable James Lawrence King, United States District Judge.  ECF Nos. [56], [70].

[2] The undersigned accepts Plaintiff's Amended Opposition to the Special Agent Motion, filed on June 3, 2022, as the operative Opposition herein.  ECF No. [77].  The Amended Opposition made minor corrections of clerical errors from the previously filed Opposition, ECF No. [75].  Plaintiff's Amended Motion for Extension of Time to File Response, ECF No. [76] is therefore **GRANTED** *nunc pro tunc* as of June 3, 2022.  The previously filed motions for extension of time, ECF Nos. [73] and [74] are **DENIED AS MOOT**.

Authority, ECF No. [79].  The undersigned held a hearing on the Government Motion, s*ee* ECF No. [68], and a subsequent hearing where both Motions were addressed on January 17, 2023, *see* ECF No. [89].  After a review of the instant Motions, the arguments of the Parties, the pertinent portions of the record, and the relevant authorities, and for the reasons stated below, it is hereby **RECOMMENDED** that the Government Motion, ECF No. [52], be **DENIED**, and the Special Agent's Motion, ECF No. [69], be **GRANTED IN PART AND DENIED IN PART**, as follows.

## I.     BACKGROUND

Plaintiff's claims arise from his arrest following a grand jury indictment that charged him and others with food stamp/electronic benefit transfer fraud, wire fraud, and conspiracy to commit the same.  ECF No. [51] ¶¶ 10–13, 23.  The Government's investigation in this case centered around fraudulent activity within convenience stores, wherein store owners and/or employees paid cash to food stamp recipients for less than the value of their food stamp benefits.  *Id.* ¶ 23.  Special Agent Dang was a federal employee[3] involved in the investigation and prosecution of the criminal action.  *Id.* ¶¶ 1, 6, 64.

Plaintiff was arrested on Friday, November 17, 2017.  *Id.* ¶ 10.  Because of the intervening weekend, Plaintiff's initial appearance was on Monday, November 20, 2017, after which he was released on bond.  *Id.* ¶¶ 16–18.  Soon after the Initial Appearance, Plaintiff's counsel informed the government that Plaintiff was innocent, and that the charges must be in error.  *Id.* ¶ 26.  The prosecutor informed Plaintiff's counsel that the government had photos and/or videos placing him at the subject store, and that the tag of a car that had been in the parking lot of the subject store was registered to Plaintiff.  *Id.* ¶ 27.  The prosecutor volunteered to view and compare the

---

[3] The TAC identifies Special Agent Dang only as a "Federal Government employee," although the Special Agent's Motion clarifies that he is a "special agent with the United States Department of Agriculture's Office of Inspector General ('USDA OIG')[.]"  *See* ECF Nos. [51] ¶ 1; [69] at 3.

photographs and images that formed the basis for the Government's identification of Plaintiff. *Id.* Plaintiff alleges that when the prosecutor reviewed the evidence, the prosecutor immediately saw that Plaintiff was not the same person that was at the stores, and notified Plaintiff's counsel that the Government intended to drop all charges. *Id.* ¶ 28. The Court dismissed all charges against Plaintiff on December 27, 2017. *Id.* ¶ 29.

Plaintiff filed his original complaint against the Government and "John Doe(s), Federal government employee(s) or former employee(s), individually". ECF No. [1]. Plaintiff asserted one claim against the Government pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 (the "FTCA"), for false arrest/false imprisonment and malicious prosecution. *Id.* at 10. Plaintiff also asserted one claim against John Doe(s) under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (hereinafter, "*Bivens*") for deprivation of Plaintiff's constitutional rights afforded by the Fourth and Fifth Amendments of the U.S. Constitution. *Id.* at 11. The Government filed a Motion to Dismiss the original complaint for failure to state a claim, ECF No. [7].

On October 8, 2021, Plaintiff filed the Amended Complaint. ECF No. [14]. The Government filed a Motion to Dismiss the Amended Complaint for failure to state a claim, ECF No. [16]. Thereafter, the Court granted Plaintiff leave to file a Second Amended Complaint. ECF No. [34]. Accordingly, on December 6, 2021, Plaintiff filed his Second Amended Complaint, ECF No. [35]. The Government filed a Motion to Dismiss the Second Amended Complaint for failure to state a claim. ECF No. [36]. Finally, the Court granted Plaintiff leave to file a Third Amended Complaint to allow Plaintiff to substitute the previously named Defendants "John Doe(s)" with Special Agent Dang; to remove references suggesting that a prosecutor would be named as a

defendant; and to add references to discovery.  ECF No. [48].  Thereafter, Plaintiff filed the Third

Amended Complaint ("TAC")—the operative complaint at issue herein.  ECF No. [51].

### A.    The Government Motion

The Government filed its Motion to Dismiss the TAC.  ECF No. [52].  The Government

argues that the TAC fails to state a claim for malicious prosecution under the FTCA for two

reasons: (1) the TAC does not sufficiently allege a lack of probable cause; and (2) the TAC does

not sufficiently allege malice.  *Id.* at 6.  The Government characterizes the events of the TAC as a

reasonable mistake that was promptly corrected after the presentation of "new evidence," and not

a malicious act to prosecute Plaintiff without probable cause.  *Id.* at 1–2.  The Government argues

that law enforcement had probable cause to arrest Plaintiff because, as the TAC alleges, "law

enforcement identified Plaintiff by checking the vehicle registration at the crime scene and

reviewing video footage and/or photographs taken of the activity".  *Id.* at 6–7.  The TAC's

allegations of mistaken identity, the Government asserts, are reasonable mistakes that do not defeat

probable cause.  *Id.* at 8.  The Government also asserts that the grand jury indictment is *prima facie*

evidence of probable cause in this scenario and subjects Plaintiff to an even higher pleading

standard than that of Federal Rule of Civil Procedure 8, which Plaintiff has not met.  *Id.* at 11.  As

to malice, the Government argues that Plaintiff has not and cannot show either actual or legal

malice on these facts.  *Id.* at 13–16.  The Government concedes that legal malice can be shown by

an absence of probable cause but maintains that probable cause did exist here.  *Id.* at 15.

Plaintiff filed his Opposition to the Government Motion.  ECF No. [54].  Plaintiff first

takes issue with the Government's assertion that new evidence was presented to law enforcement

prior to the dismissal of the criminal charges against Plaintiff.  *Id.* at 3.  Plaintiff instead argues

that the TAC's allegations show that law enforcement failed to review the video and photographic

evidence in their possession until the courthouse meeting *after* Plaintiff was already indicted and arrested on criminal charges. *Id.* Plaintiff argues that the failure to review the evidence prior to the courthouse meeting was at least reckless, if not intentional, such that there could be no probable cause for the charges and that that shows at least legal malice. *Id.* at 3–4. Plaintiff also argues that the grand jury indictment does not constitute *prima facie* evidence of probable cause in the FTCA context, because the FTCA incorporates the Florida law standard for malicious prosecution and not the federal standard in *Bivens*. *Id.* at 6.

The Government filed its Reply in Support of the Government Motion. ECF No. [55]. The Government first addresses Plaintiff's argument that new evidence was not presented to law enforcement at the courthouse meeting, arguing that while new *physical* evidence was not presented, new information may have been. *Id.* at 2. Next, the Government challenges the sufficiency of Plaintiff's allegations regarding how different the features of Plaintiff and his nephew appear, arguing that a misidentification on the TAC's conclusory allegations would be reasonable. *Id.* at 3. The Government reasserts that the grand jury indictment is *prima facie* evidence of probable cause, and that even without the grand jury indictment, probable cause clearly existed on the facts of the TAC. *Id.* at 4–5.

### B.    The Special Agent's Motion

Special Agent Dang also filed a Motion to Dismiss the TAC. ECF No. [69]. First, Special Agent Dang argues that the TAC should be dismissed because the *Bivens* claim in this context is foreclosed by *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). *Id.* at 6. Specifically, Special Agent Dang contends that this case presents a new context for a *Bivens* action, which has not been previously recognized, and that special factors counsel hesitation in extending *Bivens*. *Id.* at 9–12. Second, Special Agent Dang argues that the TAC fails to state a claim for malicious prosecution under

*Bivens* on the same grounds as the Government's Motion: (1) the TAC does not sufficiently allege a lack of probable cause; and (2) the TAC does not sufficiently allege malice. *Id.* at 16. As to probable cause, Special Agent Dang asserts that the grand jury indictment is *prima facie* evidence of probable cause, and the facts of the TAC overall support probable cause. *Id.* at 18. The TAC's allegations of mistaken identity, Special Agent Dang asserts, are reasonable mistakes that do not defeat probable cause. *Id.* at 19. As to malice, Special Agent Dang argues that the TAC does not support a finding of either actual or legal malice, as required for a malicious prosecution claim. *Id.* at 23. Finally, Special Agent Dang argues that qualified immunity bars this action against him, because the TAC shows that at the very least, he had "arguable" probable cause to believe Plaintiff was involved in the criminal activity. *Id.* at 24–26.

Plaintiff filed his Opposition to the Special Agent's Motion. ECF No. [77]. Plaintiff argues that the TAC should not be dismissed because the *Bivens* claim does not arise in a new context, and even if it did, no special factors counsel hesitation of the extension of *Bivens* to the instant case. *Id.* at 4–12. Next, Plaintiff argues that the TAC does show an absence of probable cause, and accordingly legal malice, because it clearly states that law enforcement, including Special Agent Dang, recklessly failed to review the video and photographic evidence prior to the indictment and arrest of Plaintiff. *Id.* at 12–16. Finally, Plaintiff argues that Special Agent Dang is not entitled to qualified immunity because the TAC sufficiently alleges that Special Agent Dang violated Plaintiff's clearly established constitutional rights and no reasonable officer could believe that his actions were lawful. *Id.* at 16.

Special Agent Dang filed a Reply in Support of the Special Agent's Motion. ECF No. [78]. In his Reply, Special Agent Dang argues that this case does present a "new context" for *Bivens* and Plaintiff's case law stating otherwise is both irrelevant and incorrect. *Id.* at 2. Second, Special

Agent Dang argues that special factors do counsel hesitation in extending *Bivens* to this new context, characterizing Plaintiff's case law stating otherwise as outdated and incorrect. *Id.* at 6. Next, Special Agent Dang argues that Plaintiff's Opposition fails to address all elements of the *Bivens* claim and does not adequately address the reasonableness of Special Agent Dang's actions. *Id.* at 9. Special Agent Dang then reasserts that qualified immunity does apply to bar Plaintiff's claims against him, and that Plaintiff ignores the relevant standards for qualified immunity. *Id.* at 11. Finally, Special Agent Dang argues that the Court should disregard Plaintiff's Opposition because it was filed one day past the deadline. *Id.* Special Agent Dang also filed a Notice of Supplemental Authority, advising the Court of the U.S. Supreme Court case *Egbert v. Boule*, 142 S. Ct. 1793 (2022). ECF No. [79]. Special Agent Dang asserts that *Egbert* counsels dismissal herein because the Supreme Court has foreclosed the extension of *Bivens* to this case. *Id.* at 1–2.

## II.    ANALYSIS

Rule 8(a) of the Federal Rules of Civil Procedure only requires a short and plain statement of the claim and, as such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is facially plausible when it states enough facts for the court to draw a "reasonable inference that the defendant is liable for the" alleged conduct. *Id.* The factual allegations must provide more than a "sheer possibility." *Id.* When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, a court need not accept plaintiff's legal conclusions as true. *Sinaltrainal v. Coca–Cola*

*Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamed v. Palestinian Auth.*, 566 U.S. 449 (2012).

As to the allegations against the Government in the TAC, the United States is a sovereign entity that is immune from suit unless it consents to be sued. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015) ("It is well settled that the United States, as a sovereign entity, is immune from suit unless it consents to be sued.") (citations omitted). Through the FTCA, "[t]he United States has waived sovereign immunity for claims of malicious prosecution [] when the acts are committed by 'investigative or law enforcement officers of the United States Government.'" *Zargari v. United States*, 658 F. App'x 501, 508 (11th Cir. 2016) (citing 28 U.S.C. § 2680(h)). Because Plaintiff alleges that the relevant conduct occurred in Florida, Florida law governs the analysis of the malicious prosecution claim against the Government. *See Ware v. United States*, 971 F. Supp. 1442, 1460 (M.D. Fla. 1997) ("Florida law governs all substantive aspects of Ware's claim for malicious continuation of prosecution, [] in that the alleged tortious conduct occurred in the State of Florida.") (citing 28 U.S.C. § 1346(b)). To state a claim for malicious prosecution under Florida law, a plaintiff must show that: (1) a criminal or civil judicial proceeding was commenced or continued; (2) the defendant was the legal cause of the original proceeding against the plaintiff; (3) the termination of the original proceeding was a bona fide termination in favor of the plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the defendant; and (6) the plaintiff suffered damages as a result of the proceeding. *Alamo-Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). The claim against Special Agent Dang is instead controlled by *Bivens*. 403 U.S. 388 (1971). To state a federal claim for malicious prosecution under *Bivens*, "a plaintiff must prove a violation of his

Fourth Amendment right to be free from unreasonable seizures, as well as the elements of the common law tort of malicious prosecution." *Zargari*, 658 F. App'x at 506.

### A.     The Government's Motion Should Be Denied Because The TAC States a Claim for Malicious Prosecution Under the FTCA.

The Government argues that Plaintiff has failed to state an FTCA claim for malicious prosecution because the TAC lacks two of the requisite elements: (1) Plaintiff did not plead facts to support the finding of an absence of probable cause for the original proceeding; and (2) Plaintiff did not plead facts to support a finding of malice, either actual or legal.  ECF No. [52] at 6.  The Government asserts that Plaintiff's allegations amount only to a showing that there was a "reasonable mistake," *i.e.,* a mistaken identification of Plaintiff, that was promptly corrected, and not to a malicious act that lacked probable cause.  *Id.*  Plaintiff responds that the facts do show an absence of probable cause and actual malice given the "reckless" act of failing to compare photographic and video evidence.  *See* ECF No. [54].

### 1.     The TAC Sufficiently Alleges An Absence Of Probable Cause.

The probable cause standard is the same under both Florida law and Federal law.  *See Zargari*, 658 F. App'x at 506 (quoting *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)).  "Probable cause exists 'where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.'"  *Id.* (quoting *United States v. Pantoja-Soto*, 739 F.2d 1520, 1523 (11th Cir. 1984)).   "[T]he existence of probable cause defeats a malicious prosecution claim."  *Id.* (citing *Alamo Rent-A-Car, Inc.*, 632 So. 2d at 1355).

As a preliminary matter, the Parties dispute the pleading standard for probable cause within the FTCA claim.  The Government argues that the grand jury indictment constitutes *prima facie*

evidence of probable cause, which can be overcome only by a heightened showing of fraud in the TAC.  ECF No. [52] at 9.  Plaintiff disputes the application of the Government's case law in the FTCA context, arguing that no such presumption exists under Florida law or by extension in the FTCA.  ECF No. [54] at 5.

In its Motion, the Government cites only *Zargari v. United States*, No. 13-cv-23806, 2015 WL 1587942, at *1 (S.D. Fla. Apr. 9, 2015) for the proposition that the grand jury indictment serves as *prima facie* evidence of probable cause, and that a heightened pleading standard is required to overcome the presumption.  ECF No. [52] at 9.  The *Zargari* opinion cited, however, was decided on summary judgment—not at the motion to dismiss stage.  2015 WL 1587942, at *1.  Moreover, the Court specifically noted that "a grand jury indictment is merely *some* evidence of probable cause to initiate prosecution in an action for malicious prosecution."  *Id.* at *8 (quoting *Ware v. United States*, 971 F. Supp. 1442, 1446 (M.D. Fla. 1997)).

On these facts, even if the presumption existed, Plaintiff has sufficiently pled a cause of action.  This is not a case where there is an indictment, and a later investigation reveals that the probable cause finding was incorrect.  Instead, the allegations here are that the *very same* evidence used to identify Plaintiff for purposes of charging him, when reviewed by the prosecutor after the indictment, showed that Plaintiff was not involved in the criminal conduct.  In short, the primary law enforcement conduct at issue occurred *before* Plaintiff was indicted.  Those allegations, taken in the light most favorable to Plaintiff, support the argument that he was identified and indicted only because his car was parked near the scene of an investigation.  To be sure, that may not be the factual landscape after discovery is complete, but it is now.

The Government argues that the TAC's facts, taken as a whole, support a *finding* of probable cause by law enforcement rather than an absence as required for a malicious prosecution

claim.  ECF No. [52] at 6–11.  Specifically, the Government cites to the following allegations as support for probable cause: (1) that Plaintiff's vehicle was at the scene being used by a person under surveillance; (2) that the person being surveilled was Plaintiff's nephew; and (3) that the officers had video they believed to depict Plaintiff.  *Id.* at 6–7 (citing ECF No. [51] ¶¶ 27–28, 33). The Government argues that those facts are sufficient to lead a reasonable officer to believe that Plaintiff was associated with the ongoing criminal activity under investigation.  *Id.* at 8.  The subsequent identification of Plaintiff, according to the Government, was simply a reasonable case of mistaken identity.

However, the Government's mistaken identity argument requires the Court to accept factual allegations presented by the Government that are not in the TAC.  Specifically, that the officers had reviewed the videos and believed they depicted Plaintiff.  Again, although the discovery in the case may bear that conclusion, the allegations in the TAC, which is all the Court can consider here, are different.  Indeed, the allegations in the TAC, which the Court must accept as true, are that law enforcement had access to video and photographic evidence prior to the indictment and arrest of Plaintiff and *failed to review it* at all.  ECF No. [51] ¶ 48 ("Defendant KOREY JAKE DANG and/or other Federal Government Employee(s), while acting in the course and scope of his/her/their employment or agency relationship with Defendant USA . . . [f]ailed to perform the simple task of comparing photographic images in their possession[.]").  The TAC alleges that Plaintiff's criminal counsel met with a prosecutor and law enforcement sometime after Plaintiff's initial appearance in Court.  *Id.* ¶ 27.  During that meeting, including Special Agent Dang, the Parties reviewed the video and photographic evidence already in law enforcement's possession, and "immediately" realized that Plaintiff was not one of the individuals in the video footage.  *Id.*  ¶ 28. Such a realization, according to Plaintiff, was a result of law enforcement's

failure to perform even the most basic review of the evidence prior to presenting it to a grand jury. *Id.* To be clear, this is not a standard case of misidentification. The TAC does not allege that law enforcement misidentified Plaintiff after reviewing evidence and coming to an incorrect conclusion, but rather that law enforcement arrested Plaintiff after failing to review the evidence. Such a conclusion can be reasonably inferred from the facts of the TAC as plead, and therefore the TAC does not fail to state an absence of probable cause.

### 2.     The TAC Sufficiently Alleges Malice.

The standard for malice in Florida applies to the FTCA claim herein. In Florida, the malice element of a malicious prosecution claim may be shown by either actual or legal malice. *Hall v. Sargeant*, No. 18-cv-80748, 2020 WL 1536435, at *26 (S.D. Fla. Mar. 30, 2020) (citing *Olson v. Johnson*, 961 So. 2d 356, 359 (Fla. 2d DCA 2007)). In a malicious prosecution claim, "legal malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others." *Id.* (quoting *Olson*, 961 So. 2d at 359). Plaintiff's Opposition to the Government Motion makes clear that he bases his allegations of malice not on actual malice but rather on legal malice alone. ECF No. [54] at 4 ("In an action for malicious prosecution it is NOT necessary for a plaintiff to prove actual malice; legal malice is sufficient . . . .") (emphasis in original).

Because legal malice may be inferred from "a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others," the analysis largely mirrors that of the probable cause analysis and will not be repeated herein. *Hall*, 2020 WL 1536435, at *26 (quoting *Olson*, 961 So. 2d at 359). The TAC's allegation that law enforcement had the video and photographic evidence and failed to review it, instead relying solely on the registration information for a vehicle parked near a store, is sufficient to show gross negligence at this stage. ECF No. [51]

¶ 48 ("Defendant KOREY JAKE DANG and/or other Federal Government Employee(s), while acting in the course and scope of his/her/their employment or agency relationship with Defendant USA . . . [f]ailed to perform the simple task of comparing photographic images in their possession[.]").  Thus, the TAC does not fail to allege malice as to the FTCA claim against the Government.

> **B.    The Special Agent's Motion Should Be Granted As Plaintiff's Allegations Against Him Present A "New Context" And Special Factors Counsel Hesitation Of Extending *Bivens*.**

Special Agent Dang argues that the TAC should be dismissed for three reasons: (1) the TAC fails to state a *Bivens* claim for malicious prosecution because it fails to allege both an absence of probable cause and the presence of malice; (2) the *Bivens* claim in the malicious prosecution context is foreclosed by *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and more recently *Egbert v. Boule*, 142 S. Ct. 1793 (2022); and (3) qualified immunity bars this action against Special Agent Dang, because the TAC shows that at the very least he had "arguable" probable cause to believe Plaintiff was involved in the criminal activity.  *See generally* ECF No. [69].  Plaintiff counters that the TAC should not be dismissed because: (1) the TAC adequately states a *Bivens* claim for malicious prosecution; (2) a Fourth Amendment malicious prosecution claim is not a new context under *Ziglar* or *Egbert* because it mirrors that of *Bivens*; and (3) the TAC sufficiently alleges that Special Agent Dang violated Plaintiff's clearly established constitutional rights and no reasonable officer could believe that his actions were lawful.  *See generally* ECF No. [77].

Because the events at issue occurred in Florida, the Florida common law elements of malicious prosecution would be imputed into the *Bivens* analysis as well—including (1) an absence of probable cause, and (2) malice.  *Id.*  As to probable cause, Special Agent Dang's argument largely mirrors the Government's argument, but the analysis notably differs as to the presumption

created by the grand jury indictment.  Plaintiff does not dispute that the grand jury indictment serves as *prima facie* evidence of probable cause.  ECF No. [77] at 2.  Instead, Plaintiff emphasizes that such a presumption is rebuttable.  *Id.*  Whether the allegations of lack of probable cause and presence of malice are sufficient, however, cannot be reached by the Court if the *Bivens* claim itself is foreclosed.  Indeed, the initial and, in this case, the dispositive issue is whether Plaintiff's *Bivens* claim is foreclosed by the Supreme Court's decisions in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and *Egbert v. Boule*, 142 S. Ct. 1793 (2022).  For the reasons stated below, the Court finds that it is foreclosed by the Supreme Court's holdings in *Ziglar* and *Egbert* and **RECOMMENDS** that the Special Agent's Motion be **GRANTED**.

> **1.  The Court Must Consider Plaintiff's *Bivens* Cause Of Action Under The Analysis Provided by The Supreme Court In *Ziglar* and *Egbert*.**

The Supreme Court in *Bivens* created a damages remedy against federal officials "acting under color of [their] authority" for violation of constitutional rights.  *Bivens*, 403 U.S. at 389. Specifically, the Supreme Court provided a remedy to a plaintiff who alleged a violation of his Fourth Amendment right to be free from unreasonable search and seizure, where an agent from the Federal Bureau of Narcotics "acting under claim of federal authority, entered [the plaintiff's] apartment and arrested him for alleged narcotics violations," without a warrant or probable cause. *Id.*  Thereafter, the "*Bivens* remedy" was extended twice by the Supreme Court.  First, in *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court permitted a *Bivens* claim for a violation of the plaintiff's Fifth Amendment rights under the due process clause for gender discrimination.  And then for a second time, in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court permitted a *Bivens* claim for violation of a plaintiff's Eighth Amendment right to be free from cruel and unusual punishment for failure to provide adequate medical treatment.

Approximately twenty-five years after *Bivens* was decided, the Eleventh Circuit was faced with the issue of whether a claim for malicious prosecution could proceed as a *Bivens* claim, in *Uboh v. Reno*, 141 F.3d 1000 (11th Cir. 1998), *abrogated on other grounds by Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019).  The Eleventh Circuit in *Uboh*, guided by precedent surrounding Section 1983 claims at that time, found that the district court erred in failing to treat the malicious prosecution claims pursuant to the Fourth Amendment; and found that "such a cause of action does constitute a cognizable *Bivens* claim."  *Uboh*, 141 F.3d at 1003.

Although Plaintiff urges the Court to follow *Uboh*, the Supreme Court has provided clear guidance since the *Uboh* decision on how to review *Bivens* claims, guidance that the Court cannot now ignore.  Specifically, in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court squarely addressed the question of whether a damages remedy against federal officials should be fashioned by the courts.  There, the plaintiffs were aliens who were detained after September 11, 2001, pursuant to a "hold-until-cleared" policy.  *Id.* at 1852.  The plaintiffs sued federal officials for violations of their Fifth Amendment right to substantive due process, Fifth Amendment right to equal protection, and Fourth Amendment right to be free from unreasonable searches and seizures (related to allegedly baseless strip searches in the detention facility).  *Id.* at 1853.  In assessing whether *Bivens* should be extended to the plaintiffs' situation, the Supreme Court in *Ziglar* outlined a two-step process by which courts should determine whether the application of *Bivens* is proper. *Id.* at 1857.

First, courts must determine whether the context presented "is different in a meaningful way from previous *Bivens* cases decided by this [Supreme] Court." *Id.* at 1859.  The specific cases for comparison are limited to *Bivens* (Fourth Amendment claim regarding unreasonable search and seizure); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment claim under the due process

clause for gender discrimination); and *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment claim under the cruel and unusual punishment clause for failure to provide adequate medical treatment to prisoner). *Id.* at 1854–55. The Supreme Court also provided a non-exhaustive list of ways in which a case may be "meaningfully different" from the three cornerstone *Bivens* cases:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

*Id.* at 1860. If the case is meaningfully different from *Bivens*, *Davis*, and *Carlson*, a court must ask whether any "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). The Court noted that such special factors may include whether there is "an alternative remedial structure present in a certain case" because "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1857, 1863.

In the years following *Ziglar*, the Eleventh Circuit has twice addressed *Bivens* claims for malicious prosecution—neither of which is instructive here. In *Peterson v. Overstreet*, 819 F. App'x 778 (11th Cir. 2020), the Eleventh Circuit heard an appeal of the dismissal of a *Bivens* claim for malicious prosecution as time barred. *Id.* at 780. The Eleventh Circuit did not perform the *Ziglar* two-step test because the claims had yet to accrue at all. *Id.* Then, in *Benjamin v. U.S. Dep't of Justice*, No. 21-12414, 2022 WL 1567768, at *1 (May 18, 2022), the Eleventh Circuit heard an appeal of the dismissal of a *Bivens* claim for malicious prosecution because there was nothing in the record indicating that the plaintiff's conviction or sentence had been invalidated. *Benjamin*, 2022 WL 1567768, at *2. Again, the Court did not reach the issue of whether the claim

was otherwise cognizable or perform the *Ziglar* two-step test because it affirmed the dismissal on other grounds.  *Id.*

Last year, the Supreme Court in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), again addressed whether and when *Bivens* should be extended to provide a remedy in a particular case.  The plaintiff in *Egbert* was the owner of a bed-and-breakfast abutting the Canadian border, who experienced a violent encounter with a Customs and Border Patrol ("CBP") agent.  *Egbert*, 142 S. Ct. at 1800. The plaintiff filed a grievance with the CBP and initiated a lawsuit against the agent individually under *Bivens* for use of excessive force in violation of the Fourth Amendment, and retaliation in violation of the First Amendment.  *Id.* at 1801–02.  The District Court for the Western District of Washington granted summary judgment in favor of Agent Egbert, and the Ninth Circuit Court of Appeals reversed.  *Boule v. Egbert*, 998 F.3d 370 (9th Cir. 2021), *overruled by Egbert*, 142 S. Ct. 1793 (2022).  The Ninth Circuit applied the *Ziglar* two-step test and determined that the Fourth Amendment claim arose in a new context, but that no special factors counseled hesitation in extending a *Bivens* remedy to the case.  *Id.* at 387.

On appeal, the Supreme Court reversed the Ninth Circuit's holding—instead finding that special factors did counsel hesitation in extending *Bivens* into the new context presented.  *Egbert*, 142 S. Ct. at 1809.  Because the Ninth Circuit conceded that the case presented a new context, the Supreme Court began at step two of the *Ziglar* test: special factors.  *Id.* at 1804.  However, Justice Thomas clarified that "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a potential damages remedy."  *Id.* at 1803.  More specifically, the question is "whether there is *any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Id.* at 1805 (quoting *Ziglar*, 137 S. Ct. at 1858).  Justice

Thomas emphasized that "[w]hen asked to imply a *Bivens* action, 'our watchword is caution.'" *Id.* at 1803.

The Supreme Court found that two special factors counseled hesitation in extending a *Bivens* remedy to *Egbert*. First, the Court found that concerns regarding national security was a special factor. *Id.* at 1804. The Court stated that "regulating the conduct of agents at the border unquestionably has national security implications," and the establishment of "remedies in the border-security context," is a function of Congress. *Id.* Second, the Court found that at least one alternative remedy existed so as to preclude a *Bivens* remedy. *Id.* at 1806. Specifically, the Court found that an internal grievance procedure of the CBP was a sufficient alternative remedy, despite the fact that the plaintiff would not be entitled to damages from the grievance process. *Id.* As to the adequacy of the alternative remedy, the Court noted, "we have never held that a *Bivens* alternative must afford rights to participation or appeal." *Id.* Thus, on both the national security and alternative remedy grounds, independently, the Court held that a *Bivens* remedy was precluded. *Id.* at 1809.

As noted above, Plaintiff contends that because "the Eleventh Circuit has continued to recognize that *Uboh* is settled law (for the point relevant to this case)[,]" Plaintiff's malicious prosecution claim is still viable as a *Bivens* claim today. ECF No. [77] at 6–7. In so arguing, Plaintiff concedes that "the Eleventh Circuit apparently has not yet specifically discussed the issue of viability of a post-[*Ziglar v.*] *Abbasi* Fourth Amendment malicious prosecution claim," but maintains that "[i]t can be logically inferred that the Court would likely [] find that allowing *Bivens* malicious prosecution claims would [] be consistent with the values and purposes of the Fourth Amendment." *Id.* Such a conclusion, however, would require this Court to ignore two subsequent cases from the Supreme Court and the decades of jurisprudence that followed *Uboh* and *Bivens*

18

which strongly counsel against *any* extension.  The Eleventh Circuit has made clear that a Circuit decision is "binding . . . unless and until it is overruled or undermined to the point of abrogation by the Supreme Court . . . ."  *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (citing *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001)).  Of course, such an intervening decision by the Supreme Court "must be clearly on point" in order to overrule Circuit precedent.  *Id.* (quoting *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003)).  While *Uboh* was not explicitly overruled, it is clear that *Ziglar* and *Egbert* speak directly to this issue.

As such, the tests stemming from *Ziglar* and *Egbert* must now be applied in the Courts' analyses of *Bivens*.  As to this new framework, although *Egbert* counsels that the single question at issue is "whether there is any reason to think that Congress might be better equipped to create a new damages remedy[,]" the undersigned will review the matter under both the *Ziglar* two-step test, and the single question presented by *Egbert*.  *Egbert*, 142 S. Ct. at 1803.  Under either analysis, Special Agent Dang's Motion should be **GRANTED**.

## 2. The Claim Presents a "New Context."

There is little dispute that an extension of *Bivens* under the current legal landscape is disfavored.  *See Ziglar*, 137 S. Ct. at 1864.  Indeed, that premise is far from new.  "As one court recently noted, '[t]he story of *Bivens* is a saga played out in three acts: creation, expansion, and restriction.'"  *Senatus v. Lopez*, No. 20-cv-60818, 2022 WL 16964153, at *3 (S.D. Fla. Oct. 12, 2022), *report and recommendation adopted*, No. 20-cv-60818, 2022 WL 16961323, at *1 (S.D. Fla. Nov. 16, 2022).  The "expansion" phase, however, lasted only for the duration of two opinions—*Davis* and *Carlson*—and then came the "restriction."  *Id.*  Indeed, the Supreme Court has not recognized an extension of *Bivens* since 1980, in *Carlson*, and has subsequently

19

"progressively chipped away the [*Bivens*] decision." *Id.* (quoting *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022)).

Against that backdrop, the Court first turns to whether the context presented here "is different in a meaningful way from previous *Bivens* cases decided by this [Supreme] Court"—namely, *Bivens*, *Davis*, and *Carlson*.  *Ziglar*, 137 S. Ct. at 1859.  Examples of "meaningful" differences include, but are not limited to, "the constitutional right at issue; . . . the statutory or other legal mandate under which the officer was operating;" and "the risk of disruptive intrusion by the Judiciary into the functioning of other branches."  *Id.* at 1860.

The case at hand is "meaningfully different" than *Bivens*.  In *Bivens*, an agent from the Federal Bureau of Narcotics searched the plaintiff's home, seized him, and arrested him without a warrant.  In this case, Special Agent Dang failed to review evidence, and misidentified Plaintiff *before* seeking indictment.  The only legal similarity that both cases present is that they are both grounded as violations of the Fourth Amendment.  However, this is not sufficient.  Indeed, the Supreme Court has explained that "[a] claim may arise in a new context even if it is based on the *same* constitutional provision as a claim in a case which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (emphasis added); *see also Egbert*, 142 S. Ct. at 1809 (declining to extend *Bivens* to a Fourth Amendment claim for excessive force).

The facts of the case also present a number of "meaningful differences" under the Supreme Court's definition of such that this Court must now consider.  For one, the Supreme Court in *Egbert*, relying on *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001), noted that "a case that involves a 'new category of defendants'" is one example of a new context for a *Bivens* claim. *Egbert*, 142 S. Ct. at 1803.  The agency at issue in this case, the USDA OIG, differs from the Federal Bureau of Narcotics as it operates under a different statutory mandate and performs

different functions.  *See* ECF No. [69] at 11.  Similarly, "[t]he statutory or other legal mandate under which the officer was operating," is a special factor in itself recognized by the Supreme Court.  *Ziglar*, 137 S. Ct. at 1860.  Finally, while both cases involved an arrest without probable cause, the arrest here was pursuant to a grand jury indictment whereas in *Bivens* there was no authority at all for the search of the home.  In short, the conduct at issue is meaningfully different.  These differences alone are enough to hold that this presents a new context, as "even a modest extension [of *Bivens*] is still an extension."  *Ziglar*, 137 S. Ct. at 1857.  It should be noted that although the Eleventh Circuit has not re-examined whether a malicious prosecution case can be made under *Bivens* since *Ziglar*, nearly every court that has looked at the matter has found that a malicious prosecution case is a "new context" that requires consideration of the "special factors." *See* ECF No. [69] at 10 (citing *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021); *Cantú v. Moody*, 933 F.3d 414 (5th Cir. 2019); *Williams v. Keller*, No. 21-4022, 2021 WL 4486392, at *1 (10th Cir. Oct. 1, 2021); *Lane v. Schade*, No. 15-01568, 2018 WL 4571672, at *1 (D.N.J. Sept. 24, 2018); *Karkalas, M.D., v. Marks*, No. 19-948, 2019 WL 3492232, at *1 (E.D. Pa. July 31, 2019); *Bouari v. United States*, No. 18-cv-219, 2021 WL 4462900, at *1 (D. Nev. Sept. 29, 2021); *Powell v. United States*, No. 19-cv-11351, at *1 (S.D.N.Y. Aug. 31, 2020); *Farah v. Weyker*, 926 F.3d 492 (8th Cir. 2019); *Selvam v. United States*, 570 F. Supp. 3d 29 (E.D.N.Y. 2021)).

Given that the Supreme Court has repeatedly declined to extend *Bivens* for over forty years, and the facts here are "meaningfully different" as defined by the Supreme Court since the Eleventh Circuit's opinion in *Uboh*, the claim here should be reviewed as presenting a "new context."

### 3.  The Special Factors Counsel Hesitation.

At step two, a court must ask whether any "special factors counsel[] hesitation in the absence of affirmative action by Congress."  *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S.

at 18).  Special factors recognized by the Supreme Court include, for instance, the availability of

an alternative remedial structure; national security concerns; and the risk of interference with the

Executive Branch.  *See Ziglar*, 137 S. Ct. at 1861–63 (recognizing national security, alternative

remedies, and separation of powers concerns as special factors); *Egbert*, 142 S. Ct. at 1806–07

(same).

Here, Special Agent Dang puts forth three special factors for the Court's consideration.

First, Special Agent Dang argues that Congress has provided alternative remedies by way of the

Hyde Amendment and the FTCA.  ECF No. [69] at 13.  Second, Special Agent Dang argues that

an extension of *Bivens* herein would risk interfering with the executive branch, namely,

investigative and prosecutorial functions.  *Id.* at 13–14.  Finally, Special Agent Dang asserts that

expanding *Bivens* herein would place an undue burden on law enforcement.  *Id.* at 14–15.

Plaintiff counters that Special Agent Dang's posited alternative remedies are not alternative

at all, but rather meant to coexist with a *Bivens* claim.  ECF No. [77] at 9.  Specifically, Plaintiff

argues that the FTCA has historically served as a supplement to *Bivens* and does not provide the

same form of relief to a plaintiff as *Bivens* does.  *Id.* at 9–11.  As to the Hyde Amendment, Plaintiff

argues that it is also inadequate because it is aimed at prosecutorial misconduct rather than

investigative misconduct leading to a prosecution.  *Id.* at 11.  Next, Plaintiff asserts that there is no

risk of interference with the executive branch because courts have considered malicious

prosecution claims to be *Bivens* claims in the past.  *Id.*  Finally, Plaintiff argues that applying

*Bivens* here would not place an undue burden on law enforcement, as *Bivens* is meant to deal with

"standard law enforcement operations," such as this.  *Id.* at 11–12.

The Court is not persuaded that the application of a *Bivens* remedy herein would risk

interfering with any prosecutorial function, as the indictment has since been dismissed.  Reviewing

what if anything Special Agent Dang did before identifying the target of an investigation, when the case against the target is closed hardly presents a chilling effect.  Likewise, the impact that any discovery might have on the prosecutorial process can be handled, as it already has been in this case, by the Court as those discovery issues arise.  Similarly, an ultimate finding that law enforcement must perform some investigation in order to identify someone prior to an arrest would not be an "undue burden" on law enforcement.

However, Special Agent Dang's first argument, that Congress has provided alternative remedies to redress the conduct herein, does have merit in this post-*Egbert* landscape.  In *Egbert*, the Supreme Court found that the existence of an internal grievance procedure established by the U.S. Border Patrol was a sufficient alternative remedial structure such that a *Bivens* remedy was foreclosed.  *Egbert*, 142 S. Ct. at 1805.  Notably, the Supreme Court stated "we have never held that a *Bivens* alternative must afford rights to participation or appeal" because the sole purpose is deterrence, and "even if a court independently concludes that the Government's procedures 'are not as effective as an individual damages remedy[,]'" a court cannot "superimpos[e] a *Bivens* remedy" to compensate for that fact.  *Id.* at 1806–07.

Special Agent Dang does not offer any administrative remedies, as the defendants in *Egbert* did, but instead proffers two statutory remedies as alternatives to *Bivens* here.  First, Special Agent Dang asserts that the FTCA is an adequate alternative remedy.  ECF No. [69] at 12–13.  Plaintiff counters that the FTCA is a supplement to *Bivens*, rather than an alternative remedy, and that the existence of the FTCA should not bar a *Bivens* claim.  ECF No. [77] at 9.  Whether the FTCA is an adequate alternative remedy is a more difficult question, and one that has not been decided by the Eleventh Circuit.  *See, e.g., Senatus*, 2022 WL 16964153, at *6, n.2 (declining to reach the issue and noting that "[c]ourts are split on whether the FTCA serves as an alternative remedy to a

*Bivens* action").  However, the Court here does not need to reach the issue of whether the FTCA is a sufficient alternative remedy because Special Agent Dang proffers a second alternative remedy—the Hyde Amendment, which is sufficient.

The Hyde Amendment provides an avenue for attorneys' fees where a criminal defendant was maliciously prosecuted.  Specifically, it allows a plaintiff to seek "a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make the award unjust."  Hyde Amendment Act of Nov. 26, 1997, Pub. L. No. 105-119 § 617, 111 Stat. 2440, 2519 (1997).  While the Eleventh Circuit has not yet opined on whether the Hyde Amendment may serve as an adequate alternative remedy in lieu of a *Bivens* claim for malicious prosecution, at least three other Circuits have.  First, the Eighth Circuit in *Farah v. Weyker*, 926 F.3d 492 (8th Cir. 2019) found that the Hyde Amendment was an alternative remedy that counselled hesitation in extending a *Bivens* remedy to a claim against a federal law enforcement officer for fabrication of evidence leading to a wrongful prosecution.  *Farah*, 926 F.3d at 501–02. The Eighth Circuit explained that "[t]he so-called Hyde Amendment allows courts to award attorney fees to criminal defendants who prevail against 'vexatious, frivolous, or bad[-]faith' positions taken by the government" and "[t]he fact that Congress has expressly provided a damages remedy for some victims of this particular type of injury, but not for others, suggests that it considered the issue and made a deliberate choice."  *Id.*  The Fourth Circuit in *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021), also found the Hyde Amendment to be an alternative remedy, quoting *Farah* for the proposition that Congress "considered the issue and made a deliberate choice" to limit the remedies for a malicious prosecution claim.  *Annappareddy*, 996 F.3d at 131.  Finally, the Tenth Circuit in *Williams v. Keller*, No. 21-4022, 2021 WL 4486392, at

*1 (10th Cir. Oct. 1, 2021), also found the Hyde Amendment to be an adequate alternative remedy in lieu of a *Bivens* claim for malicious prosecution. *Williams,* 2021 WL 4486392, at *4. In doing so, the Tenth Circuit explained that "Congress has provided a statutory damages remedy for some victims of wrongful prosecution by federal employees but not for others, which reflects a deliberate policy decision that we should not disrupt." *Id.*

The Court finds the reasoning of these Circuit Court decisions to be sound, and finds that the Hyde Amendment is an adequate alternative remedy despite the fact that the remedy available would not be the same as the *Bivens* action they seek. However, the Supreme Court has "never held that a *Bivens* alternative must afford rights to participation or appeal" and "even if a court independently concludes that the Government's procedures 'are not as effective as an individual damages remedy[,]'" a court cannot "superimpos[e] a *Bivens* remedy" to compensate for that fact. *Egbert*, 142 S. Ct. at 1806–07. While Plaintiff may not ultimately have a remedy against Special Agent Dang, individually, the Court cannot conclude that this *Bivens* claim can lie in this post-*Egbert* landscape. Indeed, no expansion of *Bivens* has been sanctioned in decades, and the special factor analysis alone makes such an expansion particularly indefensible under the landscape created by the Supreme Court.

### 4. *Egbert* Also Counsels Dismissal.

Alternatively, *Egbert* directs this Court to ask a single question: "whether there is any reason to think that Congress might be better equipped to create a potential damages remedy." *Id.* at 1803. More specifically, the question is "whether there is *any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (quoting *Ziglar*, 137 S. Ct. at 1858). Justice Thomas emphasized that "[w]hen asked to imply a *Bivens* action, 'our watchword is caution.'" *Id.* at 1803.

As discussed above, Congress has fashioned a remedy, albeit one that leaves this Plaintiff with no recourse, for malicious prosecution claims. Through the Hyde Amendment, Congress has provided a form of relief for malicious prosecution in federal court. Based on the guidance of *Egbert*, that is enough to bar Plaintiff's *Bivens* claim. Because Congress fashioned a remedy as against prosecutors, the Court has no reason to think that they cannot fashion the same, or a different remedy against federal agents. If Congress affirmatively decided not to create that right, their decision also leaves us in the same place. Indeed, the question is not whether Congress has acted or will act, but rather whether Congress is better suited for *any* reason to act. As Justice Gorsuch warned in his concurrence in *Egbert*, the Supreme Court's decisions in this area leave plaintiffs like Francois litigating with little purpose, finding themselves in the same place as if *Bivens* had been outright abrogated. However, it is what the Supreme Court, who initially created these actions, has decided. Thus, the undersigned recommends that the Special Agent's Motion to Dismiss be **GRANTED**. Francois' recourse is limited to his FTCA claim against the Government.[4]

---

[4] Because the Court RECOMMENDS that the *Bivens* action be dismissed, it does not reach the qualified immunity defense. There, the issue before the Court is whether the TAC sufficiently alleges that there was a constitutional violation of a clearly established right. *See Hannah v. Armor Corr. Health Servs. Inc.*, 792 F. App'x 742, 744 (11th Cir. 2019). In this case, to establish that Special Agent Dang is not entitled to qualified immunity, Plaintiff must show that "no reasonable officer could have found probable cause under the totality of the circumstances." *Id.* (citation and quotations omitted). The TAC alleges that Special Agent Dang was in possession of photographic and video evidence, yet he failed to perform even the most basic review of that evidence until the prosecution of Plaintiff was well underway. ECF No. [51] ¶ 64–66. Such an assertion, if true, would likely defeat probable cause. Indeed, the TAC does not allege that the agent made a mistake that no reasonable officer would have made, but rather, that he did nothing more that check the tag on a car to make the identification. Under the circumstances, Special Agent Dang should have known that his conduct as alleged violated Plaintiff's Fourth Amendment. However, as noted above, the Court does not need to reach this issue.

## III.     RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that the Government's Motion to Dismiss, ECF No. [52], be **DENIED,** and Special Agent Dang's Motion to Dismiss, ECF No. [69], be **GRANTED IN PART AND DENIED IN PART** as outlined above.

## IV.     OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida on February 17, 2023.

_____

**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**